We are ready for Doe v. Bigelow. Good afternoon. May it please the court, my name is Rodney Parker. I represent the appellant in this case. I want to begin by making sure that we don't lose sight of the egregious facts that this case presents. Mr. Bennett was granted parole when he refused to waive his Fifth Amendment rights in a sex offender treatment program. His parole was revoked. He challenged that in court in a habeas equivalent under Utah law. The prison retaliated and because of that he spent 10 years in lockdown, in solitary and eventually he was paroled without those restrictions. We assert federal claims in two categories that I would say are interrelated. One is the Fifth Amendment violation that led to the revocation of parole and then the retaliation, the 10 years in lockdown. There are various state law claims which present essentially the same statute of limitations issues as the retaliation claims. Turning first to the Fifth Amendment claim then, here the issue is Heck v. Humphrey and whether Mr. Bennett's claim could have been filed sooner. I want to read to you a paragraph and ask you to think in your minds if this relief had been sought in a Section 1983 case, would that case have been dismissed under the Heck Bar? If the plaintiff in the case sought immediate release of the petitioner from prison to allow the petitioner to continue on parole according to such stipulations that were lawful and in effect when petitioner's parole was unlawfully revoked. Now, I would submit to you that that seeks release from prison and that falls within Heck. Counsel, if your client was using the immediate release language for the remedy he was seeking, does that necessarily mean that the remedy would not have been a new revocation hearing? That's correct, Your Honor. I think that, excuse me, I think that what you look at there is the sequence of events. So what happens in the case? There's the conviction, there's the sentencing, there's the commitment, there's the parole, there's the revocation of parole. There's two revocations, right? That's true. There's a revocation, he's briefly released, and then there's a second. We're not parsing those separately? Your claims don't depend on us understanding those separately at all? I don't think they do. I don't think they do. So what Mr. Bennett sought, and I think it's important, he sought release and what he was seeking was in that hierarchy that I just described to eliminate the last step, to change  parole. That would then lead him to be back on parole, and that's the release that he sought, and it was pro se, and so what I read to you wasn't maybe as articulate as a lawyer might have written it. But again, if it had been filed in a 1983 case instead of in a habeas equivalent case, I think that case would have been dismissed. I wanted to talk a little bit about the philosophy of HEC, and that is to prevent Section 1983 from becoming a backdoor habeas remedy for people who are seeking to either release or a change of their sentence, and the case that I think is the most helpful here is the Wilkinson case that we've cited in our brief, but it's 544 U.S. 74, in which a prisoner expressly sought a new parole hearing, and so because it was just a new parole hearing, the HEC bar did not apply, but the policy was articulated that the need, the policy that's being served here is the need to ensure that state prisoners use only habeas when they seek to invalidate the duration of their confinement, either directly by seeking an injunction seeking speedier relief, which is what Mr. Bigelow, Mr. Bennett, I'm sorry, sought, or indirectly through a determination that necessarily implies release, and that gets into the question of how tenuous is the connection. The fact that a state may seek a new judgment through a trial or a new sentencing proceeding is, quote, beside the point at page 83, and I think that's an important point that I'll come back to in just a minute, and then Justice Scalia's concurrence focuses on whether the relief sought was available in habeas, and there was a dispute in that case about, well, you could, the state, the dissent was saying, well, they could re-sentence him. They could let a person out, it wasn't actually, it was more hypothetical, but they could let a person out and on the basis, under the habeas, and then the state could just re-sentence them and put them back in, and Wilkinson says, yeah, that could happen, but the heck bar is still applied because the relief sought was release from custody, and the possibility, as in this case, the possibility that Judge Kimball relied on, that the parole board could have found another reason, or could have, as we talked about in Wilkinson, re-sentenced, is beside the point, because that wasn't the issue that was raised in the position itself. The Utah Supreme Court ultimately held, I'm sorry. The argument that's made here is that in the attachment to your complaint, you did include the report, the, I'm trying to remember what report, parole report, and that actually specifically indicated there were some other reasons. There were other reasons given in the report, and there is a fact question embedded in that, and this is not a summary judgment, although sometimes I think that the ruling reads like one. This is not a summary judgment. There is this fact question there of, was the, when they say he was closed off in therapy, he wasn't cooperative, where is that coming from? And it's our contention that that's coming from his waiver, or his insistence on Fifth Amendment. They're asking him questions he is refusing to answer, therefore he's not cooperative. Isn't that precisely how the Utah Supreme Court understood it? I'm sorry?  Yes, I think that's exactly right. And it was just a charge, right? The violation notice that was attached, it's not the reason for the adjudication. It's the reason for the charge, correct? The document that was attached to the complaint. Right. That's not, that wasn't the reason for the adjudication. That was the reason that they requested a warrant. You have to do something to get a warrant. I think you're right about that. I think you're right about that. The Utah Supreme Court did ultimately hold that he did have a remedy available in habeas, and I think that places the case squarely within the bar of heck. I do want to reserve a couple of minutes. I just want to raise one more point and see what your response is. You briefly acknowledge this argument in the reply brief, but you don't actually address it. I'm interested in why. The defendants argue in their brief that the heck, the cruel doctrine doesn't apply where you don't actually have an invalidation by the Utah Supreme Court. You had a reversal of summary judgment. So they argue it just simply doesn't apply. I don't think that's exactly. You didn't respond in your reply brief to that. I'm interested in what your response is. My understanding of the argument they were making wasn't exactly that. It was that they were saying that because the habeas case was not resolved at that point, that the heck bar, if it applies, remained in place and still applies to this day. That was the way I understood that argument, and the answer to that is that when they did reverse, it went back down to the trial court, and eventually the prison released him. At that point, it was moot. Typically, in a lot of the heck cases, there was an adjudication that the person has prevailed. The anomaly here is the petitioner never prevailed because it was simply a denial of the summary judgment. It went back down and eventually became moot. Right. I don't know that there is necessarily a requirement that you prevail if, well, I would say. If it's moot. If you don't have an opportunity. Yeah, you don't really have that opportunity, and he did not have that opportunity at that point. But until that happened, I think that the bar was in place. And it was mooted because the state asked to dismiss because they had essentially granted him the remedy. Because they let him out, and they let him out without conditions. They didn't let him out. They paroled him, right? Well, right. They let him out. They let him out of prison, paroled him, and ended the order. Paroled him without a revocation hearing. I'm sorry. Yeah, that's right. Yeah. In the order, they expressly state that his assertion of Fifth Amendment cannot be used as a ground for revocation of this, what I guess is the third parole. Counsel, may I ask you a question? Your client is currently on parole, right? He's off parole. He's off parole. Okay. Yeah. That answers my question. All right. I will say, I would like to reserve the balance of my time. May it please the court. May it please the court. Cliff Peterson with the Utah Attorney General's Office, representing the state appellees. As I understand, a private appellee's counsel is going to submit on the briefs and not argue today. So, it's our position that the district court correctly applied the Heck versus Humphrey doctrine here. You have to look at, in Heck and in Wilkinson, specifically in Wilkinson, if the success on your 1983 claim would have necessarily shortened the term, or in this case, if it would have necessarily found that the revocation was invalid, then it's barred. But in this case, success would not have necessarily resulted in an earlier release. Why? The anomaly is, it's not a parole hearing, it's a revocation hearing. The guy has been, he's at large, he's released. And so, if you credit Paragraph 85 of the complaint that the revocation was based on a violation of the Fifth Amendment, you undo the revocation, he's, well, what do you mean? The only reason that he was revoked under Paragraph 85 was that they violated the Fifth Amendment. So, why would you have a new hearing? Well, that's in the complaint. In the attachment, there were numerous reasons articulated to the parole board. For the warrant, for the first of the two revocations, of course, you allege all sorts of things. But when you have, your argument is that the violation notice that you submitted in order to get a warrant is inconsistent with Paragraph 85. Where? Paragraph 85, you're talking about two different actions. Paragraph 85 that they rely on is the adjudication by the parole board to revoke his parole. You're relying on a document that people submitted based on a showing of probable cause to get a warrant, not for the actual revocation, not for the decision by the parole board, right? I think, Your Honor, the best response to that is the reply brief is very telling in how it tries to pin everything on the lie detector test, on the failed lie detector for refusal to answer the questions. But if you look at that probable cause statement, it's talking about not just the lie detector test. It's talking about therapy after discussing his refusal. Sure. So, it's talking about things much broader. How does that relate to, quote, by failing to make the required disclosure, a plaintiff was determined to be in violation of his parole and the parole board revoked his parole in November 2017. How does the information that was submitted in order to procure a warrant have anything to do with the truthfulness of what I just read? Well, it's because the decision was based on multiple reasons. The district court correctly concluded that. Where do you see that? I'm sorry. No. But I have the same question. I just don't see that. Go ahead. Right. And that's in the appendix 114 through 118. It is the probable cause statement. But the district court said there were multiple reasons, not just the Fifth Amendment assertion. But he didn't even process the emotions of the crime for which he was convicted. Not even talking about unreported conduct. So the district court correctly concluded that on all of these allegations, including those in the attachment, that at best, this would have resulted in a new parole hearing. Why wouldn't they give the guy a new parole hearing? He's on parole. The only question is... No, no. I'm sorry. A new revocation hearing. I misspoke. Yeah. In 2008 was the revocation hearing. But I think it makes a big difference. Because your argument is that if he were to be vindicated, he's going to get a new hearing. And that would make total sense if you're talking about a discretionary determination about whether to parole somebody. That there are all sorts of discretionary reasons. But once you're on parole, if you undo the revocation, there's nothing else to be done. You're on parole. I don't know why you'd have a new hearing if it was... If Brevard 85 is credited. In our position, this is on the Wilkinson end of the spectrum. Wilkinson was all about the process. The stiffer, harsher parole regulations. And he wanted to be judged on the earlier regulations. The second plaintiff in that case also said he didn't have a right to adequately speak. So it was all procedural. As opposed to the other end of the spectrum, which is Prysor and Wolf, and that's good faith credits. And the Wilkinson court goes through and says, what is this more like? And the district court said this is more like a procedure. This is a Fifth Amendment claim, which is a procedural right. This is more like Wilkinson, and less like Prysor and Wolf. Do you agree that if they... I'll ask you this, then I'll probably shut up with you. But if the only reason that they had revoked his parole was a violation of the Fifth Amendment, do you agree that the only remedy would be to return him to parole? I think if it was clearly documented in both the complaint and the attachments that the only thing is his invocation of his Fifth Amendment right, not his failure to engage in therapy, failure to process emotions, failure to even understand the impact on this victim. I think if there was only one thing in this whole paper trail, if it was only the Fifth Amendment, then I think he'd have a much better case. But here there's all these things being purposely deceitful, being manipulative. I think he invoked his Fifth Amendment in therapy as another tool in the many tools that he did to fight back against fully engaging in this therapy. Counsel, it seems that in this record, everyone understood that what was going on with respect to the revocation was the Fifth Amendment problem, and that the complaint says that. And do you see any problem in terms of how we're looking at the inference drawing that the court is doing at the motion to dismiss stage, if it's looking beyond that and thinking, well, maybe this violation report, you know, could have been, the revocation could have been based on something else. How is that appropriate under the standard the court was supposed to apply? I don't think it looks beyond the mark. I think the plaintiff here is the one that's trying to connect too many dots and draw the Fifth Amendment. So was the Utah Supreme Court wrong in thinking that that's exactly what was going on here? No, I think the Supreme Court observed there was a material dispute of fact of whether this was compulsory, whether this, whether he was being compelled to testify against himself because the therapist in that case said, oh, no, we don't want specifics. We don't know. What I'm saying is that the, it seems to me by reading the Utah Supreme Court decision that there's no question that they understood that the basis for the revocation was the Fifth Amendment invocation. Well, I disagree with, I think they understood that that was the claim and that was a basis of the revocation. That was a, that was an important part of it and that there was a question of fact. It is important here that they did not invalidate the revocation. All these, all they did was remanded for, for the proceedings given this dispute of fact on the summary judgment stage in the habeas case. But we're here on a motion to dismiss and a dismissal where we look at all the facts in the complaint. Right. He clearly asserted facts in his complaint, paragraph 74 through 76 to be exact, where he clearly says what the only cause of, of, of this all was and that's that he failed to disclose or that he invoked his Fifth Amendment. Right. He says that. And this is, you've got to infer. And, and even if there's something inconsistent, I'm not sure at all there is in the report that's attached to the complaint, you've got to view the complaint as a whole. Right. Including. Why isn't it just exactly, as Judge Rospin says, that the district court inferred in favor of the state? Because you also consider the appendix, pages 114 through 118, which are the attachments to the complaint. You also look at that as part of, as part of. Right. As a whole. As a whole. Correct. And what he clearly says in his complaint is, is, is, is that this was all about his Fifth Amendment. Right. And what he clearly says in the attachments is that it was multiple reasons. And he was, and he said that they were, this was disclosed to him, that Defendant Cartwright basically said people who hide secrets don't succeed, that Defendant Greenberg said the issue is you committing sexual assaults against individuals and you essentially not disclosing those assaults. Right. He, he made those specific allegations. This is a motion to dismiss. Right. And one statement by one per, a couple of people, we also have multiple, the probable cause statements. And we infer in favor of the plaintiff. Well, reasonable inferences. All right. They're trying to draw patently unreasonable inferences by having to connect too many dots, jump through too many hoops to make this all about the Fifth Amendment only. Which. I told you I was going to shut up, but I did have one other question. How does that, how does your argument about the attachment relate to the second revocation? As you pointed out in response to Judge Rossman, there were actually two revocations in 2007. The violation notice only related to the first of the two. So how does that help you on the second? Well, it's, it's, in this case, I think the record doesn't support that it was only about the Fifth Amendment. I think it was about his overall failure to engage in therapy. And I think that's, the district court got it right on that. All right. Let me turn to the alternative heck argument that we made. And that is that the court did say you can't pursue damages until the conviction has been invalidated. That the claim does not accrue until it's been invalidated. Now, that actually has more poignancy now than before. Because now on appeal, they haven't challenged the dismissal of the declaratory claims. So now the declaratory claims are dismissed and they're not challenged on appeal, so those are gone. In Wilkinson, the Supreme Court left the door open a little and said, I guess, presumably you could bring a declaratory action as a, as a predicate to your money damages claim. But that predicate's not been taken away. They haven't. Well, of course, in 2019, he's not going to ask for a declaratory judgment because you, everybody in the room would say it's moot. He's on parole. He's released. So why would he ask for a declaratory adjudication saying that he's entitled to be on parole when he's on parole? Well, because Wilkinson says you can pursue a declaratory relief as a predicate for money damages. So you can, so he has an available remedy. He can say, I am on parole. They've rescinded the revocation and so I want a declaratory judgment, federal district court. If there's a case or controversy to say, I want a declaration that they won't revoke my parole. The revocation's undone. And I don't get it. I think what Wilkinson's talking about is as a, he would be seeking a declaratory action that what happened in 2007 and in 2008 was unconstitutional. I think that's what he would have had to have sought. You're arguing that this favorable termination component of heck applies here right now? As an alternative. Yes. Because his- And we don't have, don't we have an exception to that in Cone? I don't think so. Wilkinson, Wilkinson's or Crow, actually it was Crow that said, you have to, it has to be declared invalid by a state tribunal or called into question by a habeas. So I think, I think the argument is- Does he have an, what is his available remedy in habeas now? Well, we're talking section 1983. In the 1980s, in the 1983 action, he would have had to seek a declaratory action as a predicate to his money damages claim. That's how I read what Wilkinson says about that. But now the declaratory claims have been dismissed and they're not challenged by appeal. Those are done. But Coyne versus Longshore, we said, heck does not bar a section 1983 claim when a petitioner lacks an available remedy in habeas through no lack of diligence on his part. Why doesn't he lack a habeas remedy, notwithstanding, you know, maybe he can get a declaratory adjudication that what happened 12 years ago shouldn't have happened and maybe that's somehow not true, but why doesn't he lack an available habeas remedy right now and if so, why doesn't that trigger Coyne versus Longshore? I think he might have had a declaratory remedy available at the beginning of the lawsuit, but now it's been adjudicated and not subject to, it's not part of this appeal. It's done. That claim has been dismissed and not challenged on appeal. So, even if he had a remedy to seek a declaratory judgment on what happened in 2007 and 2008, that's no longer a live claim and it's not before the court on appeal. But you do acknowledge that he does not, when he filed the complaint in federal court, he had no habeas remedy available. He couldn't have gotten a habeas. Yeah, the habeas was, but yeah, but Wilkinson's, Wilkinson also said... I think that's important to make sure it's clear. He did not have a habeas remedy when he filed the complaint, right? Yeah, I believe he did not. I believe that habeas was mooted, yes. And let me just briefly talk about the continuing violation doctrine. Herrera says that if the dates of the complaint are undisputed, in paragraphs 157 and 159, that's all we have about post-2012 conduct. It's continued to imprison plaintiff and plaintiff remained on lockdown. Those are very, those are, don't even pass the Iqbal standard. We have just those two brief allegations and the burden is on the plaintiff to come up with a theory to show the continuing violation doctrine and he hasn't done that in this case under these facts. And if there are no more questions, then we'll submit it. I just want to, back to the issue you were just discussing, I just want to, as I recall the trial court order here, the lower courts, the state court's trial court order basically said that the state counsel who appeared explicitly said not to worry, we're not going to make any, you know, we're asking you to move this, we're asking you to dismiss it, and we're not going to make any argument about Mr. Doe's ability to seek relief on 1983 specifically. I don't think it was quite that broad, but I think it really at best is saying this doesn't affect. The counsel acknowledged, the parole board's counsel acknowledged that nothing about the dismissal of Mr. Doe's claims as moved here would affect his ability to seek civil relief for damages in an appropriate procedure. If it had been timely in the first place back in 2008 after the revocation, I don't think that would stay. It doesn't sound like that was the idea there. The state court said, okay, I'll move this, I'll dismiss this, based on that representation. I don't think they were stipulating the way of all possible defenses, including this statute of limitations defense, and being able to argue heck. Well, you're arguing that the fact that there wasn't a successful or eventual decision in his favor, you're now arguing that that precludes this 1983 action. And counsel below said, we want you to move this, we want you to dismiss it, and we won't argue anything essentially that in the future we won't argue that his 1983 remedy damages remedy is precluded, and that's what you're doing today. And again, I don't think it was that broad of a decision. Thank you, Your Honors. Thank you. Okay, thank you. Thank you. I would like to turn to the retaliation claim, if I could, in the time that I have remaining. This claim is that Mr. Bennett was put into lockdown to coerce him to cede his constitutional Fifth Amendment right. And I think earlier I said he was there for ten years. It was eight years in lockdown, ten years in prison. There's no question, again, that the complaint describes an egregious violation of the Constitution. You cannot retaliate and coerce in this fashion. And so the question is, is it barred by limitations? And there are two things that I want to say about that. First, this claim was tied up with this Fifth Amendment claim. He's there because of the Fifth Amendment assertion. The coercion is being applied to get him to waive his Fifth Amendment claim, and so it would be likely in a case in which retaliation is being dealt with, back then, that the validity of that Fifth Amendment claim would be an issue. And so I think it's related. I don't see how it's tied up at all. I don't see how it's tied up in the Fifth Amendment claim. Well, I think it's related just because – Does it require a favorable termination? I think that it – no, I don't think it does. I think it could lead to a determination. I don't personally think that it would require it. I think you're correct about that. Now, the real substantive argument that we've asserted here is, is it a continuing violation? I mean, that's the real question. I do think that there's a nuance there with Fifth Amendment. But the only basis for the district court's decision here is that the complaint doesn't describe with particularity what each person did at each point in time. From 2015 on, and that's true, isn't it? That is true. Yeah, I mean – That's true. Isn't that a problem under Robbins? In Robbins, Judge McConnell said you specifically have to identify in Rule 8 who did what. And he didn't identify who did what from 2015 on. Well, there are some people who are identified. Prison warden and I think one or two other people in the complaint who are identified.  and what's being alleged in the complaint. And once he gets past these grievances that he's filed, and his habeas case is going on, and he's just sitting there in lockdown, and they're just leaving him in lockdown. And so he doesn't really have access to the information that you're talking about. He's just sitting there, and they're making him, and he doesn't have that. This is a discovery question, the way I see it. This is a factual question. The pleading puts all the people on notice of who did what as best we know. But we don't know everything. But your First Amendment claim is based on discrete acts that occurred on one day, right? Well – All of this happened on one day, back in 2009. No, because they continued to coerce him. I understand, but it's based on a discrete – according to your complaint, it's that act that – Well, that's what starts, yeah. Maybe, I mean, you might have that argument on your intentional infliction of emotional distress claim, where you have a continuing injury, essentially, and a continuing infliction of emotional distress. Right, but I – that is correct. But I think it's also correct that every day that they hold him in lockdown, unconstitutionally, in order to coerce him to give up his Fifth Amendment right, is a new violation or a continuation of the old violation. But the first – there you seem to be returning to your Fifth Amendment claim. The retaliation, as I understand it, is not retaliating for his assertion of the Fifth Amendment. It's assertion of – it's retaliation for his filing of a lawsuit, right? Well, I – And the ground for the lawsuit, you say, is well founded, because the lawsuit was founded based on a violation of the Fifth Amendment. But whether his underlying claim is – was valid or not, I think he – it doesn't help if we're hurt. So how could – how could the retaliation for the filing of a lawsuit turn on what happened in the continuing violation of the Fifth Amendment? Yeah, I understand what you're saying. The coercion was – you know, specifically, the coercion was drop your lawsuit and we'll let you out. But underlying that is the fact that the lawsuit is seeking to vindicate the Fifth Amendment right. But I do – I do agree with your point that the technical coercion was drop your lawsuit, not waive your Fifth Amendment. But dropping the lawsuit would have had that effect unless he just decided to stay in prison, which obviously he wouldn't. So thank you. I know I went way over, but I appreciate your intelligence. Thank you. All right, thank you. Thank you. It is very well presented by both sides, and we appreciate your excellent advocacy and your briefs and an oral argument.